8 F.3d 823
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
WHEELING NATIONAL BANK, a National Banking Association;
Citizens National Bank, a National Banking
Association, individually and on behalf
of all others similarly
situated,
Plaintiffs-
Appellants,
v.
STUDENT LOAN MARKETING ASSOCIATION, a corporation in the
District of Columbia, Defendant-Appellee.
 No. 93-1344.
 United States Court of Appeals,
Fourth Circuit.
 Argued: September 30, 1993.
Decided: November 2, 1993.
 
 Appeal from the United States District Court for the Northern District of West Virginia, at Wheeling. Frederick P. Stamp, Jr., District Judge. (CA-90-88-W-S)
 ARGUED: Robert Patrick Fitzsimmons, Fitzsimmons & Parsons, L.C., Wheeling, West Virginia, for Appellants.
 Douglas George Robinson, Skadden, Arps, Slate, Meagher & Flom, Washington, D.C., for Appellee.
 ON BRIEF: Jeremy C. McCamic, McCamic & McCamic, Wheeling, West Virginia, for Appellants.
 Raina H. Fishbane, Skadden, Arps, Slate, Meagher & Flom, Washington, D.C.; David L. Wyant, Shuman, Annand & Poe, Charleston, West Virginia, for Appellee.
 N.D.W.Va.
 AFFIRMED.
 Before WIDENER, PHILLIPS, and WILLIAMS, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Wheeling National Bank and Citizens National Bank[1] (the "Banks") appeal the district court's dismissal by summary judgment of their breach of fiduciary duty and covenant of good faith and fair dealing claims, as shareholders, against the Student Loan Marketing Association (Sallie Mae) on the alternative grounds that the statute of limitations barred the Banks' action and that, as a matter of law, Sallie Mae had no duty to notify its shareholders of its decision to authorize the repurchase of a portion of its shares and, further, had the right to repurchase its shares under its By-Laws. We affirm.
 
 
 2
 Sallie Mae is a private corporation established by Congress pursuant to the Higher Education Act of 1965, see 20 U.S.C.A. § 1087-2 (1990 & Supp. 1993), to serve as a secondary market for student loans and to provide liquidity for student loan investments.
 
 
 3
 In February of 1983, the Executive Committee of the Board of Directors of Sallie Mae adopted resolutions (the"Resolutions") authorizing the issuance of six million shares of adjustable rate preferred stock ("ARPS"). Five million shares of ARPS were issued a few days later. According to the terms of an offering circular and the Resolutions, Sallie Mae had the option to redeem the ARPS at $51.50 per share between March 31, 1986 and March 31, 1988. Beginning April 1, 1988, the corporation had the option to redeem its ARPS at $50.00 per share.
 
 
 4
 In May of 1983, the Executive Committee authorized the open market repurchase of up to $50,000,000 of its ARPS if the market price fell below $50.50.[2] Sallie Mae's By-Laws, Article VII, Section 8, provide:
 
 
 5
 The Corporation shall have the right, pursuant to resolution by the Board of Directors, to purchase ... its own shares, but purchases, whether direct or indirect, shall be made only to the extent of unreserved and unrestricted earned or capital surplus available therefor.
 
 
 6
 In a section entitled "Redemption", the Resolutions restrict Sallie Mae's ability to repurchase its ARPS in the following way:
 
 
 7
 (3)(f) Notwithstanding the foregoing provisions of the Section (3), if any dividends on this Series are in arrears, no shares of this Series shall be redeemed unless all outstanding shares of the Series are simultaneously redeemed, and Sallie Mae shall not purchase or otherwise acquire any shares of this Series; provided, however, that the foregoing shall not prevent the purchase or acquisition of shares of this series pursuant to a purchase or exchange offer made on the same terms to holders of all outstanding shares of this Series.
 
 
 8
 Dividends were not in arrears at any time relevant to this action.
 
 
 9
 Sallie Mae first disclosed that the Board had authorized the repurchase of its ARPS in a supplement to its 1986 Second Quarterly Report, released on August 4, 1986. All subsequent annual and quarterly reports disclosed the Board's decision, the first such annual report being the 1986 Annual Report released on March 25, 1987. The 1986 Second Quarter report, released on July 30, 1986, indicated the amount of preferred stock Sallie Mae had repurchased as of the end of the second quarter. All subsequent annual and quarterly reports made a similar disclosure. These periodic reports were sent to all shareholders of record and other interested parties who asked to be placed on the corporate mailing list.
 
 
 10
 The Banks together purchased approximately 52,000 shares of ARPS between 1984 and 1986 through their broker, First Tennessee Bank ("First Tennessee") of Memphis, Tennessee.[3] The Banks were not shareholders of record, and First Tennessee held the stock certificates for the Banks in street name. First Tennessee requested to be placed on Sallie Mae's mailing list and so received its annual and quarterly reports. Because the Banks were not shareholders of record and had not asked to be included on the mailing list, they did not receive Sallie Mae's periodic reports. Nor did First Tennessee forward such material to the Banks. Evidently, the first time the Banks became aware of the Board's May 1986 decision was on September 14, 1989, when the Banks' agent received a letter from Sallie Mae's general counsel.
 
 
 11
 The value of the ARPS fell significantly between 1986 and 1990, and the Banks suffered substantial losses as a result of their investment in the ARPS.[4] On September 6, 1990, the Banks filed this diversity action against Sallie Mae claiming that the corporation had breached a fiduciary duty to its shareholders by failing to notify the Banks of the Board's May 1986 decision to authorize the repurchase of its ARPS. The Banks further alleged that Sallie Mae breached the covenant of good faith and fair dealing because the Resolutions governing the terms of the ARPS did not permit Sallie Mae to repurchase only a portion of its ARPS. The Banks specifically claimed that Section 3(f) of the Resolutions prohibited Sallie Mae from repurchasing its ARPS unless the same offer was made to all shareholders.
 
 
 12
 After discovery, both parties moved for summary judgment. The district court denied the Banks' motion for summary judgment and granted Sallie Mae's. The court first determined that under controlling conflict of laws principles, the longest applicable statute of limitations period was three years. The court then held that on the material facts not in genuine issue, Sallie Mae's 1986 Annual Report, released on March 25, 1987, provided actual notice to the Banks through their agent First Tennessee, as well as constructive notice to the Banks as shareholders, and that the Banks did not file their action within the three-year time period.
 
 
 13
 The court then addressed, on an alternative basis, the claims on the merits and concluded that they failed as a matter of law. First, the court held that Sallie Mae did not breach any duty to notify the Banks of the Board's May 1986 decision because the decision to repurchase was not material information to a reasonable shareholder and, in any event, Sallie Mae had notified the Banks, constructively and through First Tennessee, of the Board's decision in its 1986 Annual Report. Second, the district court concluded that, as a matter of law, Section 3(f) only applied when dividends were in arrears. Since dividends were not in arrears at any time relevant to this action and the By-Laws permit Sallie Mae to repurchase its shares, the court held that Sallie Mae could not have breached the covenant of good faith and fair dealing.
 
 
 14
 This appeal followed.
 
 
 15
 We have carefully considered the district court's opinion, the written and oral arguments of counsel, and relevant portions of the record, and find no reversible error in the grant of summary judgment to Sallie Mae. Accordingly, we affirm on the opinion of the district court.
 
 
 16
 Wheeling National Bank v. Student Loan Marketing Ass'n, No. 900088 (N.D.W. Va. Feb. 19, 1993).
 
 AFFIRMED
 
 
 [1]
 Since August 1, 1991, "Columbus National Bank."
 
 
 [2]
 As of June 30, 1991, Sallie Mae had repurchased 722,350 shares, or $32,671,890.50, of its ARPS
 
 
 [3]
 Wheeling purchased 25,000 shares and Citizens purchased 27,000 shares
 
 
 [4]
 The Banks purchased the ARPS at various prices ranging from $50.90 per share to $53.00 per share. In September 1989, the market price of the ARPS had fallen to $31.25 per share, and in September 1991, the price stabilized at $34.375 per share
 The decline in the market value of the ARPS is partly attributable to changes in the tax laws. When the ARPS were issued, the Banks were entitled to an eighty-five percent intercorporate dividend exclusion under federal law. The Tax Reform Act of 1986 and the Omnibus Reconciliation Act of 1987 reduced the amount of the exclusion to seventy percent.